IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| NANCY CUMMINGS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:11CV00400 SWW |
| | * | |
| KAY HOWELL, TONY PARK, and | * | |
| RANDY WATSON, | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Before the Court is defendants' motion for summary judgment to which plaintiff responded. Defendants filed a reply to the response. For the reasons stated below, the Court finds the motion for summary judgment should be granted.

**Background[1]**

Plaintiff Nancy Cummings ("Cummings"), a white female, began working as a field sergeant at the Wrightsville Unit of the Arkansas Department of Correction ("ADC") in 2005. She spent six years working in various capacities at the Wrightsville Complex, which is comprised of the Wrightsville Unit, the Hawkins Center for Women, and the Boot Camp Program. During Cummings' employment, separate defendant Kay Howell was the warden of the Wrightsville Complex, separate defendant Randy Watson was a deputy warden, and separate defendant Tony Park was a lieutenant.

On March 5, 2008, Cummings' daughter Angel Cummings, who also was employed by

---

[1]These background facts are taken mainly from defendants' statement of undisputed facts which plaintiff did not controvert. *See* docket entries 26 & 32.

the ADC at Wrightsville, was injured in a training exercise. In her witness statement taken following the injury, Angel Cummings said that Park kissed her on the neck and told her she would be okay. Angel Cummings said she told Park to stop, and that later, when she was in the infirmary, she awoke to Park rubbing her leg. Following her injury, another ADC officer transported Angel Cummings to the hospital for stitches in her lip. Deputy Warden Watson conducted an investigation into the allegations against Park and concluded that Park did not deliberately harass Angel Cummings but that his actions were reckless and in violation of the ADC harassment policy. Deputy Warden Watson recommended that Park be suspended and placed on probation. Warden Howell concurred with Watson's conclusions and disciplined Park accordingly. Plaintiff Cummings was not present when her daughter was injured or when Park kissed Angel Cummings or rubbed her leg. She was not consulted during the investigation of the incident or the disciplinary decision following the investigation.

In the months following the incident between Park and her daughter, Cummings became concerned that Park would retaliate against her because Cummings helped her daughter with her sexual harassment complaint. Warden Howell said it came to her attention that Cummings no longer felt comfortable working around Park, and Howell, Watson, and Major Perry discussed swapping Park's assignment with another lieutenant but Major Perry objected. Warden Howell also said Park had a significant amount of experience in his assignment. She said Major Perry suggested moving Cummings to Regional Maintenance at the Boot Camp, and Howell and Watson agreed. In about July 2008, Cummings was transferred to another sergeant position within the Wrightsville Complex away from Park's supervision.

Warden Howell said that in June 2009, she received complaints from Cummings that

Park was using racial slurs around her and others and that he had sent racially offensive e-mails or texts from a state computer. As a result, Howell conducted an investigation and determined that Park had used inappropriate racial terms on two occasions around other ADC employees and sent an inappropriate racial joke via text from his personal cell phone to another officer's cell phone. Deputy Park did not send the text to Cummings; it was forwarded to her by another officer.

Warden Howell found that Park's actions were inappropriate and in violation of ADC policy and suspended him without pay and placed him on probation. Deputy Park transferred to the Pine Bluff Complex in March 2010. Deputy Warden Watson transferred to the Benton Unit in August 2010.

Plaintiff Cummings filed this action on May 11, 2011, alleging violation of her rights under the First and Fourteenth Amendments to the United States Constitution, violation of 42 U.S.C. § 1981, and violation of the Arkansas Civil Rights Act. She complains that defendants created a hostile work environment because of her association with African Americans and that defendants retaliated against her for complaining about violations of the Civil Rights Act. She also alleges defendants violated her right to association.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita,* 475 U.S. at 587 (citations omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## Discussion

Cummings brings three claims pursuant to 42 U.S.C. §1983:

19. The actions of the defendants created a hostile work environment because of her association with African Americans in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983, the Equal Protection clause of the 14th Amendment and the Due Process clause.

20. The Plaintiff complained about violations of the Civil Rights Act of 1964, as amended, and the Arkansas Civil Rights Act and was retaliated against by being given a job with less potential for promotion in violation of her First Amendment rights and the Arkansas Civil Rights Act.

>21. The individual defendants, Howell, Park and Watson, by the actions described in paragraphs 8-18, violated the Plaintiff's right of association under the Arkansas Constitution, and the U.S. Constitution, together with her rights to equal protection and due process as granted by both Constitutions.

Compl., ¶¶ 19-21.

1. Hostile Environment

Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998).

"The 'work environment' theory of discrimination holds that an employee has a right to work in an environment free of discrimination, and that a plaintiff has standing to sue for the violation of that right even if he or she is not a member of the minority group allegedly discriminated against." *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 459 (8th Cir.1985). Hostile work environment claims under Title VII and § 1981 are analyzed under the same standards. *Watson v. CEVA Logistics U.S., Inc.* 619 F.3d 936, 941 (8th Cir. 2010). To establish a claim for hostile work environment because of her association with African-Americans, a plaintiff must show she associated with a protected group and was subjected to unwelcome harassment based on her association with a protected group which affected a term, condition, or privilege of employment. *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 881 (8th Cir. 2005). She must also show the employer knew or should have known of the harassment and failed to take prompt and effective remedial measures to end the harassment. *Id.*

An employee experiences a hostile work environment when "the workplace is permeated

with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tademe v. Saint Cloud State Univ.,* 328 F.3d 982, 991 (8th Cir.2003) (internal quotations omitted). To decide whether a plaintiff has demonstrated that the harassment affected a term, condition or privilege of her employment, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interfered with the employee's work performance." *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 892-3 (8th Cir. 2005).

The evidence is undisputed that Cummings associated with African-Americans, and Cummings argues the evidence establishes that Park has a racist attitude. She asserts the following acts by defendants created a hostile work environment: Park used his work computer to send racist e-mails and text messages which other employees would forward to Cummings; other employees told Cummings that Park called her a "nigger loving bitch;" Park said that Major Perry was babying Cummings because of a medical condition; and that Park had his field riders shave their heads and made statements that he was Aryan Nation and was thinking about putting lightning bolts down his neck. Cummings complains that while Park was watching, a female field officer while making a snarling face at Cummings, grabbed her crotch and ran over to Park laughing. Cummings said that when she was preparing for an audit of tools, an inmate told her Park had stolen some of the tools so she would lose her job and that Park had another employee ask her what color her boyfriend is. Cummings complains that Park asked her whether her daughter was dating a black ADC officer and if so, that "no white man wants her after a

nigger has had her;" that Park used the term "nigger loving bitches" in her presence as he watched a television show during lunch; and that Park told others that he was going to make sure Cummings lost her job and that they should not trust her. Cummings said another officer told her that Park was trying to get inmates to write false statements against her and Cummings related how angry Park had become when she had to shake him down prior to his coming into another building.[2]  Cummings complains that Howell did not address her complaints about Park's behavior.

Defendants argue that Cummings cannot establish that she had to work in a harassment-filled environment so severe or pervasive that it affected a term, condition, or privilege of her employment with the ADC.  Defendants state that many of her allegations contain no racial component or reference to her association with African-Americans.  Further, Cummings was not a witness to many of the allegations.  *See Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995)(hearsay testimony inadmissible to support summary judgment opposition).  Of the two comments Cummings witnessed, only one was made directly to her - about whether her daughter dated an African-American.

The Eighth Circuit has "repeatedly emphasized that anti-discrimination laws do not create a general civility code." *Shaver v. Independence Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003).  "The standard is a demanding one, and '[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' will not suffice.  Additionally, '[m]ere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile environment.'" *Watson v. CEVA*

---

[2] Defs.' Mot. Summ. J. , Ex. D.

*Logistics U.S., Inc.*, 619 F.3d 936, 942 (8th Cir. 2010)(internal citations omitted).

Considering all the circumstances, the Court finds Cummings fails to establish a genuine issue of material fact as to whether she was subjected to a hostile work environment based on her association with African-Americans. While Park's comments, most of which were not directed to Cummings, show a racist attitude, Cummings' allegations fail to show that the offensive remarks were of such duration or frequency as to create a hostile environment. *See Joens v. John Morrell & Co.*, 354 F.3d 938, 941 (8th Cir. 2004)(Title VII does not "create a federal remedy for all offensive language and conduct in the workplace")(internal quotation omitted).

2. Retaliation

Plaintiff Cummings asserts that when she complained about violations of Title VII and the Arkansas Civil Rights Act, defendants retaliated against her by giving her a job with less potential for promotion thus violating her rights under the First Amendment and the ACRA. "To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that it engaged in a protected activity, (2) that the defendants responded with adverse action that would 'chill a person of ordinary firmness' from continuing in the activity, and (3) that 'the adverse action was motivated at least in part by the exercise of the protected activity.'" *L.L. Nelson Enterprises, Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 807-8 (8th Cir. 2012)(quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir.2004)). "[T]he First Amendment is implicated only when the speech or petition that motivated the retaliation involves matters of public concern. Otherwise, 'a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior' . . ." *Id*. at 808 (internal citations omitted).

Defendants argue Cummings cannot establish any of the elements necessary to prove a case of retaliation. Plaintiff Cummings engaged in protected activity when she assisted her daughter with her sexual harassment complaint following the incident with Park in March 2008. Separate defendant Park was disciplined in April 2008 and Cummings was transferred in July 2008. Plaintiff Cummings did not make any complaints that Park was using racial slurs until June 2009. Defendants argue Cummings was not engaged in any protected activity at all because it was her daughter who made the complaint of sexual harassment, and Cummings requested a change in her work situation because she felt uncomfortable working with Park. Defendants further argue that the position to which she was transferred was an equivalent position, with the same salary, benefits, and potential for advancement.

Plaintiff Cummings says her transfer from the ICC garage to regional maintenance, where she had to supervise inmates who worked outside along the highway and other places in the sun, was less desirable even though she had the same pay and the same leave.

The Court finds Cummings fails to establish a genuine issue of material fact as to her claim of retaliation. The evidence is undisputed that Cummings was concerned that Park would retaliate against her for helping her daughter file a complaint against him and requested not to work with him anymore. In response to Cummings' request, Howell placed her in an equivalent job, at an equivalent rank with equivalent benefits. There is no credible evidence to support retaliatory conduct.

3. Right of Association

Plaintiff Cummings asserts that defendants violated her right of association under the

United States and Arkansas Constitutions. In support of her claim, Cummings alleges Park made racially derogatory remarks about her because he knew she was dating an African American. *See* Compl. at ¶ 9. The United States Supreme Court has recognized an individual's right to associate with others in intimate relationships. In *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984), the Court said that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."

"Like freedom of speech, the freedom of association is a basic constitutional freedom that 'lies at the foundation of a free society.' This right extends to protect certain intimate human relationships, such as the husband-wife relationship, from state intrusion." *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1081 (8th Cir. 2008)(internal citation omitted). To prevail on a her right of association claim, Cummings must show that she had an intimate human relationship; that defendants intentionally interfered with that relationship; and that her intimate human relationship was a substantial or motivating factor in defendants' actions. *Id* at 1082; *Reasonover v. St. Louis Cty.,* Missouri, 447 F.3d 569, 584 (8th Cir. 2006).

Defendants argue Cummings cannot establish a violation of her right of association because there is no evidence that Howell or Watson knew Cummings was dating an African American, and even if Park knew, a simple dating relationship has not been recognized as an intimate human relationship. Plaintiff Cummings argues that the Constitution protects a dating relationship. *See Wilson v. Taylor*, 733 F.2d 1539, 1544 (11th Cir. 1984)(reversed on other grounds)("A state violates the fourteenth amendment when it seeks to interfere with the social

relationship of two or more people. We conclude that dating is a type of association which must be protected by the first amendment's freedom of association"). The Court notes that *Wilson* was decided about one month before the *Roberts* case, which held the Constitution protected associations involving "certain intimate human relationships." 468 U.S. at 618.

The Court finds there is no evidence in the record of a protected relationship or that defendants knew of one, or that any defendant acted in a way that intentionally interfered with Cummings' dating relationship.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 8] be and is hereby granted. Judgment will be entered for defendants.

DATED this 29th day of June, 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE